UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CORETTA STEWART,** | ) | Case No. 1:05-CV-00022 |
| | ) | |
| **Plaintiff,** | ) | JUDGE O'MALLEY |
| | ) | |
| v. | ) | |
| | ) | |
| **FIRSTENERGY CORP.,** *et al.*, | ) | **OPINION & ORDER** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter arises on Defendants' June 15, 2006 *Motion for Summary Judgment* (Doc. 32), in which Defendants request that this Court enter summary judgment in their favor on their counterclaim for breach of the *Agreement to Release in Full* (the "Agreement" or "Release") (Doc. 11, Ex. A). Plaintiff filed a *Combined Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment* (Doc. 33) on July 17, 2006. Defendants filed a combined *Opposition to Plaintiff's Motion for Summary Judgment and Reply in Support of Their Motion for Summary Judgment* (Doc. 34) on August 10, 2006.

In this second *Motion for Summary Judgment*, Defendants argue that Plaintiff breached the Agreement and seek, under Section 3, subsections (G) and (H) of the Agreement, reimbursement for all costs, including attorneys' fees, incurred in defending this action, and repayment of the $8,116.00 (plus interest) in severance money paid to the Plaintiff. Plaintiff's *Motion for Summary Judgment* asks this Court to find the Agreement to be unenforceable. For the reasons more fully discussed below, however, this case is **DISMISSED.**

**I.     BACKGROUND**

The background of this case is fully set forth in this Court's Order of March 29, 2006 (Doc. 28), incorporated herein by reference, in which the Court granted Defendants' first *Motion for Summary Judgment* (Doc. 15), finding that Plaintiff knowingly and voluntarily executed the Agreement which barred the claims she alleged in her Complaint. A brief summary of the procedural history of this case, however, bears reiteration.

In early 2005, Defendants filed a *Notice of Removal* (Doc. 1) because Plaintiff alleged a number of claims in this case based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*. Shortly after the case was removed, Defendants filed an *Amended Answer and Counterclaim* (Doc. 13) alleging that Plaintiff breached the terms of the Release. In late 2005, the Defendants moved for summary judgment on all of Plaintiff's claims. The Court, in its March 29, 2006 Order (Doc. 28), granted summary judgment to the Defendants, completely disposing of Plaintiff's complaint, which provided the original basis for this Court's jurisdiction. The only remaining issues, therefore, are: (1) whether the Plaintiff breached the Release by filing suit in this matter (the Defendants' state-law claim for breach of contract); and (2) whether, if so, Defendants may seek their attorneys' fees and the consideration paid in exchange for the Release as damages for that breach.

**II.    DISCUSSION.**

When a federal court has dismissed the claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C. 1367(c)(3). "Whether a district court should decide a pendent state-law claim after dismissing all claims over which it had original jurisdiction depends on a balancing of factors that include judicial

economy, convenience, fairness, and comity." Ferrette v. Cuyahoga County Bd. of Elections, 105 Fed. Appx. 722, 727 (6th Cir. 2004) (citations and internal quotations omitted). It is well-established within the Sixth Circuit that a court's dismissal of the claims providing for original jurisdiction at an early stage (*i.e.*, as here, on summary judgment) strongly weighs in favor of dismissing of the remaining state-law claims. See Musson Theatrical Corp. v. Fed. Express Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.") (citing Taylor v. First of America Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992) ("when all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction . . . ." (internal quotations and citations omitted); Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir. 1991) (only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial."); Gaff v. Fed. Deposit Ins. Corp., 814 F.2d 311, 319 (6th Cir. 1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims.")).

Here, because the Plaintiff's federal claims have been denied on summary judgment, the factors generally weigh in favor of declining to exercise jurisdiction over the remaining state-law counterclaims. It is arguable, however, because the parties subsequently briefed the remaining issues of state law for this Court, many of the critical facts at issue are uncontested, and this Court is very familiar with both the terms of the Agreement and the parties' dispute, that judicial economy would be facilitated by proceeding to address the remaining counterclaim for breach of contract. See

Blakely v. United States, 276 F.3d 853, 863 (6th Cir. 2002) (holding that it was not an abuse of discretion to exercise jurisdiction over remaining state-law claims where parties had briefed and orally argued the relevant issues which could be decided as matter of law). Despite these facts, the Court finds, after reviewing the parties' motions for summary judgment and thoroughly examining the state of the law on the issues raised by this aspect of the parties' dispute, that resolution of the counterclaim here would *not* substantially serve judicial economy and does not present an exception to the general guidance provided by the Sixth Circuit.

As noted above, both parties have moved for summary judgment on Defendants' remaining counterclaim. Neither party's brief, however, has provided this Court with an adequate discussion of the relevant facts or law. In fact, the parties have completely ignored a pivotal argument: whether the provision permitting attorneys' fees violates Ohio's public policy.[1] Plaintiff purports to make a public policy argument, but that argument chiefly addresses whether an uneducated individual's reliance upon the erroneous advice of counsel when executing an agreement should render the entire agreement void as against public policy. Plaintiff's brief only tangentially mentions a disparity in bargaining position (the importance of which is discussed below).[2] Plaintiff, moreover, fails to cite

---

[1] A secondary issue, also completely unaddressed by the parties, is whether the provision requiring the Plaintiff to return her severance pay is punitive in nature and also against Ohio public policy. Lake Ridge Academy v. Carney, 613 N.E.2d 183, 187-88 (Ohio 1993) ("In certain circumstances . . . complete freedom of contract is not permitted for public policy reasons. One such circumstance is when stipulated damages constitute a penalty." And, "[t]he characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract."). Additionally, because the Court has determined that the Release is binding and bars Plaintiff's claims, it is unclear why Plaintiff should return the original consideration for the Release (the severance payment), yet remain barred from pursuing her claims – another argument unaddressed by the parties.

[2] That argument simply rehashes the Plaintiff's position, previously rejected by the Court, that the Release was not knowingly or voluntarily executed.

4

a single relevant case. Defendants, for their part, note that Plaintiff has not cited any case law discussing Ohio's public policy relating to attorneys' fees provisions, but fail themselves to discuss the policy. Instead, Defendants offer a lone, dated citation from the Sixth Circuit remanding a case for a determination of attorneys' fees where a party violated a release. See Astor v. Int'l Bus. Mach. Corp., 7 F.3d 533 (6th Cir 1993). The Sixth Circuit's decision, however, does not address Ohio's public policy relating to attorneys' fees provisions. Instead, the Sixth Circuit remanded the case for a determination of reasonable attorneys' fees; presumably returning the public policy considerations to a district court more intimately familiar with the facts relevant to that debate. Id. at 540.

The Court's own research has revealed that Ohio courts have regularly discussed the public policy implications of attorneys' fees provisions since the 1800s and, importantly for this Court, recent Sixth Circuit decisions (entirely overlooked by both parties) have also addressed the issue. The Sixth Circuit's decisions recognize that, subject to certain exceptions, "recovery of attorney fees is said to be repugnant to [Ohio] public policy." Colonel's, Inc. v. Cincinnati Milacron Mktg. Co., 149 F.3d 1182 (Table), 1998 WL 321061, at *4 (6th Cir. 1998) ("Since State v. Taylor, 10 Ohio 378 (1841), Ohio has followed the traditional American rule that a stipulation by parties to a contract which permits attorney fees to be awarded as costs of collection upon default is void and against public policy.");[3] see also Scotts Co. v. Cent. Garden & Pet Co., 403 F.3d 781, 791 (6th Cir. 2005) (recognizing that attorneys' fees provisions are generally unenforceable, but that limited exceptions have been carved out by Ohio courts); Clarklift of Northwest Ohio, Inc. v. Clark Equip. Co., 869 F.

---

[3] Though many of the cases addressing the public policy implications of attorneys' fees provisions are in the context of a collection action, Ohio courts have addressed the issue in other contexts as well. See RB-3 Assoc. v. M.A. Bruder & Sons, Inc., No. C-3-95-198, 1996 WL 1609231, at *3-*7 (S.D. Ohio Aug 26, 1996) (collecting cases).

5

Case: 1:05-cv-00022-KMO Doc #: 35 Filed: 01/05/07 6 of 7. PageID #: 308

Supp. 533, 535-36 (N.D. Ohio 1994) (noting that Michigan law permits attorneys' fees provisions, but that Ohio law generally does not); Worth v. Aetna Cas. & Sur. Co., 513 N.E.2d 253, 257-58 (Ohio 1987) (permitting, in an employment context, an attorneys' fees indemnification provision that was the product of "free and understanding negotiation" and was not "one-sided"). The Court, after a review of relevant state and federal caselaw, believes that the critical factors that must be considered when determining the enforceability of an attorneys' fee provision are: (1) whether the provision was freely and specifically bargained for; and (2) the relative bargaining positions of the parties. See id. Unfortunately, the parties have not addressed the law on either factor, and have not developed the facts relating to (at least) the first factor. Those key issues, therefore, would have to be briefed anew before the Court could properly decide them. This additional briefing would frustrate any potential judicial economy.

The Court, therefore, finds that the parties' largely inapposite submissions do not present an "overwhelming interest in judicial economy." Aschinger, 934 F.2d at 1412. Furthermore, because the parties are from the same geographic area, the Court finds no compelling justification for retaining jurisdiction based on either convenience or fairness factors. See Horen v. Bd. of Educ., No. 06-CV-1635, 2006 WL 2711560, at *1 (N.D. Ohio Sept. 19, 2006). Finally, because the issues present (perhaps unsettled) questions of Ohio public policy, a comity analysis also militates against exercising jurisdiction. See RB-3 Assoc., 1996 WL 1609231, at *3-*7 (noting a "lack of agreement" among Ohio's intermediate appellate courts as to the enforceability of attorneys' fees provisions in various contexts).

The Court, having considered comity, judicial economy, fairness, and convenience, and taken into account the Sixth Circuit's guidance (which counsels toward declining jurisdiction when the

6

federal claims are resolved at an early stage), declines to exercise jurisdiction over Defendants' remaining state claim.

### III. CONCLUSION.

For the foregoing reasons, this case is **DISMISSED without prejudice**. Defendants' *Motion for Summary Judgment* (Doc. 32) and Plaintiff's counter *Motion for Summary Judgment* (Doc. 33), therefore, are **DENIED** as moot.

**IT IS SO ORDERED.**

                                                s/Kathleen M. O'Malley
                                                **KATHLEEN McDONALD O'MALLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**Dated: January 5, 2007**